United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| **UNITED STATES of AMERICA,** | ) ) ) | |
| v. | ) ) | Criminal Action No. 18-10247-NMG |
| **JESUS LEONARDO CASTILLO-MARTINEZ,** | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Jesus Leonardo Castillo-Martinez ("Castillo-Martinez" or "defendant") seeks to dismiss the indictment against him for illegal reentry pursuant to 8 U.S.C. § 1326(d). He submits that the removal order that underlies the sole count of illegal reentry is unlawful and thus there is no valid removal to form the necessary predicate for the charged offense.

Castillo-Martinez primarily relies upon the United States Supreme Court's recent decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018), for the proposition that a Notice to Appear ("NTA") that lacks notification of the time and place for the removal proceedings is facially deficient and cannot vest the Immigration Judge with jurisdiction over the matter. He contends that without such jurisdiction, the Immigration Judge lacks authority to issue a valid order of removal. Furthermore,

he contends that his original removal order, based on an incorrect determination that his drug conviction was for an "aggravated felony", was wrongful and that he was not therefore automatically removable.

For the reasons that follow, the Court finds that the decision in Pereira is not controlling and the Immigration Judge had jurisdiction to issue Castillo-Martinez's order of removal. Moreover, defendant cannot satisfy the factors set forth in § 1326(d) to attack collaterally his prior order of removal.

## I. Background

### A. Criminal History

Castillo-Martinez was born in the Dominican Republic in 1973. He became a Lawful Permanent Resident ("LPR") in July, 1981, when he was eight years old.

In August, 1996, at age 23, Castillo-Martinez was convicted in Massachusetts state court of Distribution of a Class D Controlled Substance (marijuana) in violation of M.G.L. c. 94C, § 32C. He received a two-year suspended sentence and probation. In December, 2010, Immigration and Customs Enforcement ("ICE") officials encountered Castillo-Martinez at a jail in New Hampshire while he was awaiting trial on another drug trafficking charge for the sale of OxyContin. ICE lodged a detainer at that time.

In June, 2012, Castillo-Martinez was convicted in New Hampshire state court on the second drug-trafficking charge. He received a suspended sentence of 5 to 10 years. Defendant was then transferred into ICE custody and removal proceedings were initiated against him.

B. **Removal Proceedings**

Castillo-Martinez was served an NTA while in ICE custody. It notified him that he was removable from the United States based on his conviction of an aggravated felony but did not state a date, time or place for his removal hearing.[1] The sole grounds for removal listed in the NTA was defendant's 1996 drug conviction in Massachusetts state court.

In July, 2012, counsel for Castillo-Martinez filed a responsive pleading with the Immigration Court conceding defendant's removability but indicating that he would apply for deferral of removal pursuant to the Convention Against Torture ("the CAT"). After a hearing in November, 2012, the Immigration Judge denied defendant's application for relief under the CAT. Castillo-Martinez appealed that denial to the Board of Immigration Appeals ("the BIA") but it denied the petition and

---

[1] Neither party alleges that defendant was subsequently served a Notice of Hearing specifying the time and place of his removal hearing as required by the applicable regulations. See 8 C.F.R. § 1003.18(b). Because 1) Castillo-Martinez fails to allege that he was not served with subsequent notice, 2) he actually appeared at his hearing and 3) both parties cite caselaw whereby courts have held that subsequent notice cures an initial defect in the NTA for purposes of vesting jurisdiction, the Court presumes that defendant was served a subsequent Notice of Hearing.

ordered his removal. The Department of Homeland Security ("DHS") deported Castillo-Martinez to the Dominican Republic in April, 2013.

**C.   Subsequent Reentry and Prosecution**

In August, 2016, Castillo-Martinez was arrested in Massachusetts and taken into administrative custody by ICE. DHS reinstated his prior order of removal and he was again deported to the Dominican Republic in November, 2016.

In June, 2018, Castillo-Martinez was again arrested in Massachusetts and charged with trafficking in heroin. In August, 2018, he was charged in a one-count indictment with illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2). That charge was based on the 2016 removal order which was itself a reinstatement of the initial 2013 removal order.

In February, 2019, defendant filed a motion to dismiss the indictment on the grounds that 1) based on a broad reading of the Supreme Court's decision in Pereira, the Immigration Judge lacked jurisdiction to enter the initial order of removal in 2013 that forms the basis of the present prosecution and 2) the sole charge of removability in the 2012 NTA was not based upon an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43)(B) and thus he was not removable as a result.

## II. Motion to Dismiss the Indictment

### A. Legal Standard

Title 8 U.S.C. § 1326(d) permits a non-citizen to mount a collateral attack against a prior deportation order in a prosecution for illegal reentry under limited circumstances. In order to succeed, the defendant must demonstrate that

> (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). The third prong of fundamental unfairness requires a showing of both a procedural error and prejudice. United States v. Luna, 436 F.3d 312, 319, 321 (1st Cir. 2006) (requiring "a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred" (quoting United States v. Loaisiga, 104 F.3d 484, 487 (1st Cir. 1997))). The defendant must satisfy all three prongs in order to attack successfully a prior order of removal. Id. at 317.

### B. Relevant Law

The Immigration and Naturalization Act ("the INA" or "the Act") prescribes the process for conducting removal proceedings but does not specifically address the jurisdictional prerequisites for the Immigration Judge. See 8 U.S.C. § 1229a.

Rather, the INA empowers the United States Attorney General to promulgate regulations governing those proceedings, including regulations that specify how and when jurisdiction vests with the Immigration Judge. See 8 U.S.C. § 1103(g)(2); 8 C.F.R. §§ 1003.13, 1003.14(a). Those regulations provide that

> [j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court . . . .

8 C.F.R. § 1003.14(a). That charging document includes an NTA. 8 C.F.R. § 1003.13.

The INA defines an NTA for purposes of removal proceedings under the statute as requiring "[t]he time and place at which the proceedings will be held". 8 U.S.C. § 1229(a)(1)(G)(i). For purposes of vesting jurisdiction with the Immigration Judge, however, the regulations require only that an NTA include "the time, place and date of the initial removal hearing, <u>where practicable</u>. 8 C.F.R. § 1003.18(b) (emphasis added). Where the initial NTA fails to include the time, place or date of the removal hearing, the Immigration Judge is required to provide the non-citizen with a subsequent Notice of Hearing containing that information. Id.

In Pereira, the Supreme Court interpreted the statutory definition of NTA in the context of the INA's so-called "stop-time rule" to determine whether an NTA lacking time or place information would warrant application of that provision.

Pereira, 138 S. Ct. at 2109; see also 8 U.S.C. § 1229b(d)(1)(A). Explaining that the stop-time provision specifically cross-referenced the statutory definition of NTA in § 1229(a) and was therefore unambiguous, the Court held that only an NTA listing the time and place of the removal hearing could trigger the stop-time rule. Pereira, 138 S. Ct. at 2118 ("A document that fails to include such information is not a notice to appear under section 1229(a) and thus does not trigger the stop-time rule." (internal quotation marks omitted)).

The Court repeated throughout the opinion, however, that the issue presented in that case was "narrow" and it never discussed the vesting of jurisdiction in the Immigration Judge. See id. at 2110, 2113. The Court also noted that an NTA could serve several different functions in removal proceedings. See id. at 2115 n.7 ("[T]here is no reason why a notice to appear should have only one essential function . . . [and] [e]ven if a notice to appear functions as a 'charging document,' that is not mutually exclusive with the conclusion that a notice to appear serves another equally integral function: telling a noncitizen when and where to appear.").

In addition, under the INA a non-citizen who has been convicted of an "aggravated felony" is both deportable, 8 U.S.C. § 1227(a)(2)(A)(iii), and ineligible for discretionary relief. 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i) (ineligible to apply for

-7-

asylum); §§ 1229b(a)(3), (b)(1)(C) (ineligible for cancellation of removal or adjustment of status). The INA includes as an aggravated felony the "illicit trafficking in a controlled substance", 8 U.S.C. § 1101(a)(43)(B), which in turn encompasses a conviction of a drug offense that the Controlled Substances Act makes punishable by more than one year in prison. See 18 U.S.C. §§ 924(c)(2), 3559(a)(5).

In determining whether a state conviction qualifies as an aggravated felony under the INA, courts apply the "categorical approach" to determine whether the state offense corresponds to a federal offense listed in the Act. Moncrieffe v. Holder, 569 U.S. 184, 190-91 (2013). Under this approach, courts do not look at the actual facts underlying the prior state conviction but rather analyze

> whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony . . . [such that] conviction of the state offense necessarily involved . . . facts equating to [the] generic [federal offense].

Id. at 190 (internal quotation marks omitted) (second and third alterations in original) (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 186 (2007) and Shepard v. United States, 544 U.S. 13, 24 (2005) (plurality opinion)).

**C. Application**

    **1. Claim under Pereira**

        **i. Jurisdiction of Immigration Judge**

The precise issue presented by this case is whether the statutory definition or the regulatory definition governs what an NTA must contain in order to vest jurisdiction in the Immigration Judge. There is a substantive nationwide split in authority among the district courts on that issue. Compare, e.g., United States v. Lopez-Urgel, 351 F. Supp. 3d 978, 986-87 (W.D. Tex. 2018) (holding that 1) Pereira controls, 2) an NTA that lacks time and place is not a charging document under the regulations that can vest jurisdiction with the Immigration Judge and 3) the government could not prosecute the defendant for illegal reentry because the prior removal order was invalid), and United States v. Erazo-Diaz, 353 F. Supp. 3d 867, 872-74 (D. Ariz. 2018) (same), with United States v. Mejia, Criminal No. 18-cr-133-01-JL, 2018 WL 6050905, at *3-4 (D.N.H. Nov. 19, 2018) (holding that 1) Pereira was inapposite, 2) an NTA lacking time and place was sufficient to vest jurisdiction with the Immigration Judge under the applicable regulations and 3) the defendant could not satisfy the § 1326(d) factors to collaterally attack his prior removal order), and United States v. Romero-Caceres, 356 F. Supp. 3d 541, 547-53 (E.D. Va. 2018) (same).

The only two Circuit Courts of Appeals that have addressed the jurisdiction vesting issue, albeit not in the context of a prosecution for illegal reentry, have both held that an NTA lacking time and place information is nevertheless a valid charging document under the regulations which vests the Immigration Judge with jurisdiction. In Karingithi v. Whitaker, 913 F.3d 1158 (9th Cir. 2019), the Ninth Circuit held that the Immigration Judge had jurisdiction to order the defendant removed despite the failure of the initial NTA to list the time and place of the removal hearing. Id. at 1162. The Court found that the decision in Pereira did not control because that case dealt only with the stop-time provision and not the distinct issue of the Immigration Judge's jurisdiction. Id. at 1161. The Ninth Circuit emphasized that the Court in Pereira relied on the fact that the stop-time provision specifically cross-referenced the statutory definition of NTA which required both time and place whereas the regulations defining an NTA for purposes of vesting jurisdiction contained no such requirement. Id. The Court concluded that the regulatory definition of an NTA therefore applied with respect to jurisdiction vesting and that an NTA lacking the time or place of the removal hearing was sufficient to vest the Immigration Judge with jurisdiction to order removal. Id. at 1160-61.

In Santos-Santos v. Barr, the Sixth Circuit also rejected the defendant's contention that the Immigration Judge lacked jurisdiction to issue an order of removal where the initial NTA failed to list the time and place of the removal hearing. Id. at 489-91. Relying on Karingithi, the Sixth Circuit held that the regulatory definition of an NTA controls for purposes of vesting jurisdiction and that so long as the non-citizen was subsequently notified of the time and place of the removal hearing in a separate Notice of Hearing, the Immigration Judge is properly vested with jurisdiction under the regulations. Id. at 490.

This Court adopts the reasoning of the Sixth and Ninth Circuits and concludes that the regulatory definition of an NTA applies for purposes of vesting jurisdiction with the Immigration Judge. Furthermore, courts normally defer to an agency's interpretation of a statute where 1) the statute is ambiguous and 2) the agency's interpretation of the statute is reasonable. Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984). Notwithstanding that Congress explicitly defined an NTA in the INA, the statute is silent with respect to the vesting of jurisdiction in the Immigration Judge and is thus ambiguous as to that issue. Moreover, an agency is not required to incorporate a statutory definition of a term into its regulations that use the same term

so long as the regulatory definition is a permissible interpretation of the statute. See <u>Envtl. Def.</u> v. <u>Duke Energy Corp.</u>, 549 U.S. 561, 574-76 (2007).

Here, the regulatory definition of an NTA for purposes of vesting jurisdiction is a reasonable interpretation of the INA given the statute's silence in that regard. The fact that Congress defined an NTA elsewhere in the statute does not require a contrary conclusion. The Supreme Court itself acknowledged that an NTA could serve different functions. See <u>Pereira</u>, 138 S. Ct. at 2115 n.7. To serve the notice function the non-citizen must actually be notified of the time and place of the removal hearing so that he or she can appear. <u>Id.</u> at 2115. On the other hand, the function of vesting jurisdiction is directed toward the Immigration Judge rather than the non-citizen and thus notification of time and place is unimportant for that distinct purpose. <u>United States</u> v. <u>Ramos-Delcid</u>, Case No. 3:18-cr-00020, 2018 WL 5833081, at *4 n.6 (W.D. Va. Nov. 7, 2018).

Because Castillo-Martinez was served with an NTA containing all of the required information and was presumably served a separate Notice of Hearing informing him of the time and place of his removal hearing (given that he actually appeared at that hearing), the DHS complied with all of the regulatory requirements for vesting the Immigration Judge with

jurisdiction. Castillo-Martinez was thus subject to a valid order of removal both in 2013 and in 2016 when that order was reinstated.

### ii. Section 1326(d) Factors

Because the Court concludes that the Immigration Judge had jurisdiction to enter Castillo-Martinez's order of removal, defendant cannot satisfy the § 1326(d) factors to prevail on a collateral attack against that order. Castillo-Martinez has not demonstrated that he has exhausted his administrative remedies with respect to the alleged jurisdictional issue but rather asserts that the exhaustion requirement should be excused because the removal proceedings were void ab initio. Given the Court's determination that the Immigration Judge had jurisdiction to enter the subject order of removal, that argument is rejected. See Mejia, 2018 WL 6050905, at *4. The arguments of Castillo-Martinez with respect to the opportunity for judicial review are rejected for the same reasons.

Finally, defendant cannot establish that the entry of his removal order was fundamentally unfair pursuant to Pereira. Specifically, Castillo-Martinez cannot demonstrate that the result of the removal proceedings would have been different but for the defect in the initial NTA because he actually appeared at those proceedings with counsel. Id. Defendant's motion to

dismiss the indictment on the basis of the alleged jurisdictional defect will be denied.

   **2.   Aggravated Felony Claim**

In addition to his jurisdictional claim under Pereira, Castillo-Martinez seeks to attack collaterally his prior removal order on the grounds that his Massachusetts state court conviction for Distribution of a Class D Substance (which formed the basis of that removal) is not an aggravated felony. Moncrieff, 569 U.S. at 206 (holding that "[i]f a noncitizen's conviction for a marijuana distribution offense fails to establish that the offense involved either remuneration or more than a small amount of marijuana, the conviction is not for an aggravated felony under the INA").

Even assuming that the subject Massachusetts state court conviction is not an aggravated felony, Castillo-Martinez cannot satisfy the § 1326(d) factors to collaterally attack his prior order of removal. Castillo-Martinez concedes that he failed to exhaust his administrative remedies and was not denied an opportunity for judicial review. Indeed, he admits that his counsel at the removal hearing conceded his status as an aggravated felon and defendant did not appeal that determination to the BIA. Rather, Castillo-Martinez now submits that his counsel during the removal proceedings was constitutionally

ineffective and thus his failure to exhaust his administrative remedies or seek judicial review should be excused.

Assuming such an exception to the exhaustion requirement exists, defendant has not established that he is entitled to it. See United States v. Soto-Mateo, 799 F.3d 117, 121 (1st Cir. 2015). To prevail on a claim for ineffective assistance of counsel, the defendant must prove that 1) counsel's performance was deficient and 2) the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984).

Defendant has not shown that the performance of his prior counsel at the removal proceedings was constitutionally deficient. While Castillo-Martinez's counsel conceded removability based on the prior state court conviction, his determination that the conviction was an aggravated felony was based on the controlling law in the First Circuit at the time. See Julce v. Mukasey, 530 F.3d 30 (1st Cir. 2008) (holding that a conviction under M.G.L. c. 94C, § 32C constitutes an aggravated felony conviction for purposes of the INA), abrogated by Moncrieffe, 530 F.3d at 184. Counsel's reliance on a reasonable interpretation of existing law at the time is not rendered faulty by subsequent developments in the law. Cf. Soto-Mateo, 799 F.3d at 123.

Furthermore, even if Castillo-Martinez could prove that his counsel was deficient, he cannot show that he was prejudiced and

thus cannot satisfy either the second prong of the Strickland test or the fundamental unfairness prong of § 1326(d). Castillo-Martinez would not have been allowed automatically to remain in the United States had his prior conviction not been considered an aggravated felony but rather would have had to apply for and be granted discretionary relief from removal. See 8 U.S.C. § 1227(a)(2)(B)(i) (providing that any non-citizen "convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable"). There is no constitutional right to be considered for or granted discretionary relief. Soto-Mateo, 799 F.3d at 123-24. Nor does defendant argue that he would likely have been granted such relief. Thus defendant cannot prove that there is a reasonable likelihood that the result of the removal proceedings would have been different, i.e. that he would have been allowed to remain in the United States. Id.

Accordingly, Castillo-Martinez cannot collaterally attack his prior order of removal under § 1326(d) and thus his motion to dismiss the indictment will be denied.

## ORDER

For the foregoing reasons, defendant's motion to dismiss the indictment for illegal reentry (Docket No. 33) is **DENIED**.

**So ordered.**

                                            /s/ Nathaniel M. Gorton
                                            Nathaniel M. Gorton
                                            United States District Judge

Dated May 6, 2019